UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NASH FINCH COMPANY,
SUPER FOOD SERVICES, INC.,

    Plaintiffs,

v.                                          Case No. 07-10997

2125 VIENNA CORPORATION,
JIMMY SEMAAN, KIFAH SEMAAN,        HONORABLE AVERN COHN
VIENNA SUPERMARKET, INC.,
D/b/a CLIO IGA SUPER MARKET, and
THOMAS SIMMAN,

    Defendants.

_____/

**MEMORANDUM AND ORDER
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
COUNTS I-III, IV (BREACH OF CONTRACT) AND DEFENDANTS' COUNTERCLAIM
AND
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT COUNT
V (FRAUD)**[1]

I. Introduction

This is a breach of contract case. Plaintiffs Nash Finch Company and Super Food Services, Inc. (collectively, "Nash Finch") are suing defendants 2125 Vienna Corporation, Jimmy Semaan, Kifah Semaan, Vienna Supermarket, Inc. d/b/a Clio IGA Super Market, and Thomas Simaan, claiming that defendants have breached certain contracts essentially by failing to purchase grocery products from Nash Finch.

Before the Court are two motions for partial summary judgment filed by Nash

---

[1]The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

Finch:

>Motion for Partial Summary Judgment on Counts I-III, and Count IV and for Summary Judgment on Defendants' Counterclaim[2]

>Motion for Partial Summary Judgment on Count V (Fraud)

As will be explained, defendants have not filed proper responses to the motions. For the reasons that follow, the motions are GRANTED.

## II. Background

### A. The parties

Plaintiff Nash Finch Company is a Delaware corporation with a principle place of business in Minnesota. Plaintiff Super Food Services, Inc. is a wholly-owned subsidiary of Nash Finch. Nash Finch and Super Food Services Inc. Supply grocery products, provides financial services, including loans, to retail entities, including retail grocery stores.

Defendant 2125 Vienna Corporation ("2125 Vienna") is a Michigan corporation incorporated on May 29, 2003. Defendant Jimmy Semaan is the sole owner and shareholder of 2125 Vienna. Defendant Kifah Semaan is the spouse of Jimmy Semaan.

Defendant Vienna Supermarket, Inc. is a Michigan corporation incorporated on September 6, 2002. It operates a retail grocery store located at 2219 West Vienna Road in Clio, Michigan which has been operating since 2005. Defendant Thomas Simaan is the sole shareholder and owner of Vienna Supermarket, Inc. and the brother

---

[2]Nash Finch says it is seeking summary judgment only as to liability and concedes that issues of material fact remain as to damages.

of Jimmy Semaan.[3]

In December 2003, 2125 Vienna and Nash Finch entered into a Retail Sales and Service Agreement ("RSSA") effective December 19, 2003 for the operation of a market in Clio. Under the RSSA, Nash Finch loaned 2125 Vienna $600,000, payable in weekly installments over seven (7) years. The loan, evidenced by a Note, was apparently to redevelop and existing retail grocery store.

Under the RSSA, 2125 Vienna agreed, <u>inter alia</u>:

1. To purchase product (inventory and supplies) from Nash Finch for seven years
2. Nash Finch would be the primary supplier to 2125 Vienna for certain products
3. 2125 Vienna would purchase product from Nash Finch at a rate of at least 50% of its retail sales volume
4. In order to ensure compliance with the 50% sales volume, 2125 Vienna would provide Nash Finch with its quarterly and annual financial statements and copies of quarterly invoices.
5. If it failed to meet product purchase requirements or comply with the terms of the RSSA, Nash Finch has the option to declare default. Upon default, 2125 Vienna agreed that it would be liable for lost profits and any unpaid loan balance.

To secure its loan obligation, 2125 Vienna and Nash Finch executed a Security Agreement granting Nash Finch a first-priority security interest in its collateral. On January 13, 2004, a UCC Financing Statement was filed pledging the collateral in 2125 Vienna to Nash Finch. In addition, Jimmy Semaan and his wife, Kifah Semaan, guaranteed the loan by executing a Personal Guarantee.

Although the RSSA contemplated that a market would be opened by 2125 Vienna, that did not happen.

---

[3]Although their surnames are spelled differently, there appears to be no dispute that Jimmy Semaan and Thomas Simaan are brothers.

3

What happened was another corporate entity, Vienna Supermarket, opened the market in Clio in 2005, several months after the execution of the RSSA.  In September 2005, Vienna Supermarket began purchasing product from Nash Finch ostensibly under the RSSA.  A month later, in October 2005, Vienna Supermarket opened the market in Clio.  On November 18, 2005, a UCC Financing Statement was filed in which Vienna Supermarket which pledged the collateral in the market to another entity, Sherwood Food Distributors.

Nash Finch apparently did not realize that the entity purchasing product, Vienna Supermarket, was not 2125 Vienna, the entity with whom it had contracted.

A year later, in November 2006, 2125 Vienna terminated the RSSA.

Vienna Supermarket purchased product from Nash Finch from September 2005 to November 2006.

On March 5, 2007, Nash Finch declared default on 2125 Vienna, Jimmy Semaan and Kaifa Semaan and demanded payment.

B.  Procedural History

On March 8, 2007, Nash Finch sued defendants.  The First Amended Complaint makes the following claims:

    Count I - Breach of RSSA against 2125 Vienna
    Count II - Action on Promissory Note against 2125 Vienna
    Count III - Action on Security Agreement against 2125 Vienna
    Count IV - Breach of Guarantee against Jimmy and Kifah Semaan
    Count V - Fraud against all defendants

Defendants filed an answer and counterclaim, asserting that Nash Finch breached the RSSA, including providing products that were out-of-date, or close to expiration, damaged or otherwise defective.

The parties then engaged in discovery; defendants were not forthcoming. A phone conference was held on September 7, 2007 during which the Court directed defendants to produce certain documents.

Meanwhile, on October 15, 2007, Nash Finch filed a motion for partial summary judgment on all claims except Count V.

On November 14, 2007, the Court held a hearing on the parties' outstanding discovery disputes. The Court again instructed defendants to produce the requested discovery. The Court also inquired about whether defendants intended to file a response to Nash Finch's motion for partial summary judgment on Counts I, II, III and IV. The Court was informed that defendants would file a response the next day.

Nash Finch also informed that it intended to file a motion for summary judgment on the remaining count, Count V, but defendants' failure to provide relevant discovery precluded them. The Court permitted Nash Finch to file a motion after the dispositive motion cut off date and permitted it to submit a proposed (non-monetary) sanctions order.

On November 15, 2007, defendants filed a paper styled "Defendants' Response and Brief in Support to Plaintiffs' Motion for Summary Judgment and Defendant Thomas Simaan's Request to be Removed from this Action." The paper was stricken for violation of CM/ECF policies because it contained both a response to Nash Finch's motion and a motion. Defendant was directed to re-file in the proper form. Defendants failed to do so.

On November 29, 2007, Nash Finch filed a reply.

On January 8, 2007, Nash Finch filed a motion for partial summary judgment on

5

the remaining count, Count V (fraud).

On January 9, 2008, the Court entered an Order Setting Motion Response Filing Deadlines and Scheduling Motion Hearing, directing that (1) defendants file a response to Nash Finch's January 8, 2008 motion by February 11, 2008, (2) defendants file a corrected response to Nash Finch's October 15, 2007 motion by February 11, 2007, and (3) Nash Finch may file a reply to the January 8, 2008 motion by February 25, 2008, and (4) a hearing will be held on Nash Finch's March 26, 2008. As will be explained, defendants did not comply with this order.

III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8

6

F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV. Analysis

As an initial matter, although defendants did not properly respond to Nash Finch's motions; indeed, their only filing on October 15, 2007 was stricken, the Court has reviewed the paper and to the extent possible, gleaned defendants' arguments contained therein.

A. Counts I, II, and II (Breach of Contract, RSSA, Security Agreement, Note)

Nash Finch says it is entitled to summary judgment on its breach of contract claims against 2125 Vienna arising from its obligations under the (1) RSSA, (2) the Security Agreement, and (3) Note. The Court agrees.

7

Under applicable Michigan law, "[t]he elements for a breach of contract claim are: (1) a contract between the parties, (2) the terms of the contract require performance of a certain action, (3) a breach, and (4) the breach caused injury to the other party." Synthes Spine Co. v. Calvert, 270 F. Supp. 2d 939, 942 (E.D. Mich. 2003) (citing Webster v. Edward D. Jones & Co., 197 F.3d 815, 819 (6th Cir. 1999)).

As to the RSSA, it is clear that 2125 Vienna failed to purchase product on a "continual basis" for seven years. The RSSA was executed in December 2003 and the first purchases, although not by 2125 Vienna, were in September 2005. Although the initial 20 month absence of any purchases constituted a breach, Nash Finch says that "understanding that the Store was being remodeled, patiently and reasonably waited for the Store to open and refrained from declaring default under the RSSA during or immediately after this extended delay, even though it could have." Nash Finch brief at p. 9 n. 10. Moreover, in November 2006, 2125 Vienna prematurely terminated the RSSA. There is also uncontradicted evidence that 2125 Vienna failed to provide financial information, i.e. quarterly financial statements, as required in the RSSA. Based on this evidence, which 2125 Vienna does not dispute, 2125 Vienna breached the RSSA.

To the extent that defendants' arguments can be discerned, 2125 Vienna argues that it had a right to terminate the RSSA because Nash Finch delivered poor product, and as a result, Nash Finch is in breach. This argument also forms the basis for 2125 Vienna's counterclaim, on which Nash Finch has also moved for summary judgment. Because the arguments are related, the Court prefers to address them in the context of

Nash Finch's breach of RSSA claim.[4]

2125 Vienna's counterclaim raises a host of complaints against Nash Finch under the RSSA involving product returns, free merchandise, the coupon and advertising program, and cash registers. As Nash Finch points out, however, all of these allegations fall within the scope of the RSSA's limitation of liability clause, which states:

> Notwithstanding [Nash Finch's] efforts to provide quality items, services and programs to [2125 Vienna], [Nash Finch's] liability with respect to any items, services and programs shall be limited to replacement of any defective items, service or program, or a refund of the purchase price, at [Nash Finch's] option. [2125 Vienna] releases [Nash Finch] from and [Nash Finch] shall not be liable for, any special consequential or punitive damages, regardless of the facts or theory upon which the claim is based.

The record is clear that defendants are not seeking the replacement of defective items, services, or programs, or a refund. Rather, the counterclaim seeks lost profits. Such damages are not recoverable under the RSSA. Moreover, Nash Finch has supplied detailed evidence from Charles R. McCown, Division Manager which serviced the market in Clio, indicating that it replaced, refunded or otherwise issued a credit for the products and merchandise at issue. See Exhibit P McCown Affidavit at ¶ 18 and Exhibit Q - Supplemental McCown Affidavit at ¶ 3. Defendants' reliance on the unsupported

---

[4]Nash Finch also argues that summary judgment is proper against Vienna Supermarket, Thomas Simaan, Jimmy and Kifah Semaan because none are parties to the RSSA. This argument is well-taken. The RSSA is between 2125 Vienna and Nash Finch. While defendants assert that Vienna Supermarket is the "management arm" of 2125 Vienna, it is an independent corporation; it is not a parent, subsidiary or successor of 2125 Vienna. Moreover, the RSSA specifically precludes any "purported or claimed third-party beneficiary." RSSA at ¶ 39. It is well established that "one who is not a party to an agreement cannot pursue a claim for breach of the agreement." First Sec. Sav. Bank v. Aitken, 573 N.W. 2d 307, 314 (Mich. Ct. App. 1997).

and conclusory testimony of Jimmy Semaan as to defective product is insufficient to create a genuine issue of material fact as to Nash Finch's performance under the RSSA.  Summary judgment in favor of Nash Finch's breach of contract claim and against 2125 Vienna on its counterclaim seeking lost profits is appropriate.  See Pichey v. Ameritech Interactive Media Servs., 421 F. Supp. 2d 1038, 1043-44 (W.D. Mich. 2006) (claim seeking damages for lost profits barred by limitation of liability clause; summary judgment appropriate).

As to the other agreements reflecting the relationship between Nash Finch and 2125 Vienna, 2125 Vienna executed a Security Agreement, effective December 13, 2003, granting Nash Finch a first-priority security interest in the collateral located at or used in connection with the market in Clio.  Under the Security Agreement, 2125 Vienna agreed to maintain a minimum of $450,000 in inventory.  2125 also agreed that the collateral would not be encumbered without Nash Finch's prior consent.  2125 Vienna also signed an delivered a Commercial Promissory Note (Note) to Nash Finch on December 22, 2003.  Under the Note, 2125 Vienna promised to pay Nash Finch $600,000 plus interest in weekly installments for (7) seven years.  Under the Note, a default under the Note, RSSA or Security Agreement makes the unpaid principal loan balance plus interest immediately due.

Because, as discussed above, 2125 Vienna breached the RSSA, under the cross default provisions, it became liable under the Security Agreement and Note. Additionally, Nash Finch says that 2125 Vienna independently breached the Security Agreement and Note.  The Security Agreement was breached because 2125 (1) allowed the collateral to be pledged to another party without its consent and (2) allowed

another entity - Vienna Supermarket - to operate the market in Clio.  In short, 2125 Vienna is in breach of the Security Agreement and Note.  The Note was independently breached because it is undisputed that 2125 Vienna has not paid the outstanding balance due under the Note.

As such, Nash Finch is entitled to summary judgment as to 2125 Vienna's liability under the RSSA (Count I), the Security Agreement (Count III) and Note (Count II).

### B.  Count IV - Guarantee

Liability under a guaranty is established upon a showing that (1) the party to be held liable executed the guaranty; and (2) the obligation guaranteed has been defaulted upon.  See, e.g., F.D.I.C. v. Hershiser Signature Properties, 777 F. Supp. 539, 540 (E.D.Mich.1991).  Both elements are established.

First, it is undisputed that Jimmy and Kifah Semaan executed a personal Guaranty in connection with the $600,000 loan.  Second, when 2125 Vienna defaulted under the RSSA, Nash Finch notified Jimmy and Kifah Semaan in accordance with the terms of the Guarantee on March 5, 2007.  They have not made payment.  Thus, Nash Finch is entitled to summary judgment on its claim against Jimmy and Kifah Semaan (Count IV).

### C.  Count V - Fraud

Nash Finch separately moves for summary judgment on its fraud claim in part because defendants have not been forthcoming in discovery relevant to this claim.  At the hearing on November 14, the Court permitted Nash Finch to file a motion for summary judgment on Count V along with a proposed sanction order supporting the motion that designates facts to be taken as established for purposes of the motion.

That proposed order is attached.

Defendants did not file a response to this motion.

Under the circumstances, the Court will enter Nash Finch's proposed order contemporaneously with this decision. The order establishes the following facts:

1. In September 2005, shortly before the market in Clio opened in October 2005, Jimmy Semaan had 2125 Vienna transfer its collateral to Thomas Simaan's corporation, Vienna Supermarkets.
2. Before the transfer, 2125 Vienna had no assets other than the collateral.
3. 2125 Vienna received nothing in exchange for the transfer; this was far less than a reasonably equivalent value for the collateral.
4. The transfer disposed or all 2125 Vienna's assets, and 2125 Vienna became insolvent as a result of the transfer.
5. The transfer was intended to hinder, delay or defraud Nash Finch with respect to satisfaction of Nash Finch's claims against 2125 Vienna.
6. The transfer was made for the benefit of Thomas Simaan; his brother, Jimmy Semaan, gratuitously gave him (through their respective corporations) all the assets necessary to run the market in Clio.
7. The transfer and its assets were concealed by defendants - not only during the period in which the market in Clio was purchasing product from Nash Finch but also during this litigation.
8. The value of the collateral at the time of the transfer was more than the amount necessary to satisfy Nash Finch's claims against 2125 Vienna.

Under the order, Nash Finch shall file, <u>inter alia</u>, an affidavit documenting reasonable estimates of the market in Clio's missing retail sales information using retail sales information from three comparably sized stores.

Based on the above now-admitted facts, it is clear that Nash Finch is entitled to summary judgment on its fraud claim, both constructive fraud and actual fraud. Constructive fraud is found under section 566.35 of Michigan's Uniform Fraudulent Transfer Act, which states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the

12

debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

M.C.L. § 556.35(1). See also, In re Hurtado, 342 F.3d 528, 532 (6th Cir. 2003) ("[C]onveyances made by an insolvent debtor without reasonably equivalent value received in exchange are ... considered fraudulent under § 566.35(1)....").

All of the elements are established. 2125 Vienna, the debtor, transferred the collateral to Vienna Supermarket in September 2005. Nash Finch is a creditor as of December 2003 and its claim arose before the transfer. 2125 Vienna received nothing of value in the transfer. The transfer disposed of all 2125 Vienna's assets and it became insolvent as a result. Accordingly, the transfer from 2125 Vienna to Vienna Supermarkets is fraudulent as a matter of law under § 566.35(1).

As to actual fraud, section 566.34 (1)(a) provides that a transfer is fraudulent where there is actual fraud where the "debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of debtor." Here, the Court has found that the transfer was intended to hinder, delay or defraud Nash Finch with respect to 2125 Vienna's obligations under the RSSA and other agreements. Indeed, the transfer was from a corporation wholly owned by one brother to a corporation wholly owned by another brother. The transfer details were concealed, both during the time the market in Clio was purchasing product from Nash Finch and during this litigation.

As to relief available, M.C.L. § 566.38(a)(2) provides that a creditor may obtain judgment "for the value of the asset [fraudulently] transferred ... or the amount necessary to satisfy the creditor's claim, whichever is less" against "the first transferee of the asset or the person for whose benefit the transfer was made." Accordingly, Nash

13

Finch is entitled to judgment against defendants for the full amount of the transfers or any alternative remedies available under applicable law.

V. Conclusion

Although Nash Finch is entitled to summary judgment as to liability on all of its claims, the amount of damages is an open question, including whether defendants are collectible. It is hoped that at some point Nash Finch will be able to present the Court with a proposed money judgment.

SO ORDERED.

      s/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated: March 19, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 19, 2008, by electronic and/or ordinary mail.

      s/Julie Owens
      Case Manager, (313) 234-5160